**UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF ILLINOIS**

|  |  |  |
|---|---|---|
| **NICOLE DAVIS,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | Case No. 1:25-cv-15347 |
| **MARIKA, LLC,** | ) ) | |
| **Defendant.** | ) ) ) | |

## <u>SPECIALLY APPEARING DEFENDANT'S MOTION TO DISMISS</u>

Specially Appearing Defendant MARIKA, LLC (hereinafter, "Defendant" or "Marika"), hereby moves to dismiss the Complaint (Dkt. 1) filed by Plaintiff NICOLE DAVIS ("Plaintiff" or "Davis") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). As set forth in the Memorandum in Support filed concurrently herewith, this Court lacks personal jurisdiction over Defendant. Further, Plaintiff fails to state a claim for both asserted causes of action.

WHEREFORE, Marika respectfully requests the Court dismiss the Complaint and grant any further relief it deems just and proper.

Dated: February 23, 2026

Respectfully submitted,

Colleen O'Brien, Esq.
FAM, LLC
5553-B Bandini Blvd.
Bell, CA 90201
(323) 767-2504
cobrien@fambrands.com
dgomez@fambrands.com
*Pro Hac Vice Pending*

/s/ Manotti L. Jenkins
Manotti L. Jenkins (Atty. No. 6276932)
Law Offices of Manotti L. Jenkins LTD.
33 North Dearborn Street, Suite 1000
Chicago, Illinois 60602
Tel: (312) 208-9537
Fax: (872) 228-8153
mj@mljlawoffices.com

Attorneys for the Specially Appearing
Defendant, Marika, LLC

## CERTIFICATE OF CONFERRAL

I HEREBY CERTIFY that prior to filing this motion, I conferred with counsel for

Plaintiff, who opposes the relief sought herein/failed to respond.

Colleen O'Brien, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the Court's CM/EF system this 23rd day of February 2026, which will provide notice and copy hereof to all counsel of record.

<u>/s/ *Manotti L. Jenkins*</u>
Manotti L. Jenkins

**UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| NICOLE DAVIS,          ) | |
|         ) | |
|         Plaintiff,     ) | |
|         ) | |
|         v.         ) | Case No. 1:25-cv-15347 |
|         ) | |
| MARIKA, LLC,         ) | |
|         ) | |
|         Defendant.    ) | |
|         ) | |

**SPECIALLY APPEARING DEFENDANT'S**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Specially Appearing Defendant MARIKA, LLC (hereinafter, "Defendant" or "Marika"), files this Memorandum in Support of its Motion to Dismiss the Complaint (Dkt. 1) filed by Plaintiff NICOLE DAVIS ("Plaintiff" or "Davis"). For the reasons stated herein, the Complaint must be dismissed under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). First, this Court lacks personal jurisdiction over Defendant. Second, Plaintiff fails to state a claim as the Website is not subject to Title III requirements as it lacks the required nexus to a physical retail location. Third, declaratory relief is not available in private ADA actions. Plaintiff's Complaint should be dismissed.

**FACTUAL BACKGROUND**

Nicole Davis, a visually impaired Illinois resident, filed suit against Marika on December 17, 2025, alleging violations of Title III of the ADA. Davis claims she attempted to purchase leggings on Defendant's website on August 28, 2025, but encountered accessibility barriers that prevented her from completing the transaction. Marika is, and is alleged to be, a Delaware

1

Limited Liability Company with its principal place of business located at 5553-B Bandini Boulevard, Bell, California 90201.

The company operates a commercial website (the "Website") that offers activewear and fitness apparel to consumers across the United States but no physical stores of its own or other locations open to the public. (See https://marika.com/, describing no "locations" and Dkt. at 1 Complaint, alleging and identifying no physical locations.)

Davis alleges the website contains numerous accessibility barriers including lack of alternative text on images, improper heading hierarchy, inaccessible interactive elements, and requirements for mouse-only navigation. The Complaint seeks injunctive relief and compensatory damages on behalf of a nationwide class of visually impaired individuals.

In January and February 2026, Defense counsel demanded voluntary dismissal based on Judge John Robert Blakey's recent ruling in *Constance Henry v. Shepherd's Dream, LLC*, Case No. 1:25-cv-12067, where this Court dismissed a substantially similar ADA website accessibility claim against a California LLC for lack of personal jurisdiction. Plaintiff's counsel did not respond.

## ARGUMENT

### A. Plaintiff Fails to Allege Personal Jurisdiction over Marika.

The Due Process Clause of the Fourteenth Amendment authorizes personal jurisdiction over an out-of-state defendant if she has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

2

Jurisdiction over a defendant can be established either through general or specific jurisdiction. *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2009). General jurisdiction looks to the defendant's "continuous and systematic" contacts with a state, whether or not the action is related to the contacts. *Helicópteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).) Specific jurisdiction "refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). Here, there is no contention that general jurisdiction is present; thus, Marika will only address specific jurisdiction.

Specific jurisdiction requires a defendant's contacts with the forum State to be directly related to the conduct pertaining to the claims asserted. *Tamburo*, 601 F.3d at 702. The mere fact that a defendant's conduct affects a plaintiff with connections to the forum State is not sufficient to establish jurisdiction. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (*quoting Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984).

After a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff must show that the defendant is either domiciled in the forum state or has "(1) purposefully directed [her] activities at the forum state or purposefully availed [herself] of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010)).

As alleged in the Complaint, Marika is a Delaware corporation based in California. Dkt. at 1, ¶20. It does not have offices or employees in Illinois, nor does the Complaint allege any

3

connection to the state of Illinois other than Plaintiff's purported use of the Website. Plaintiff relies on two theories, both of which fail.

Plaintiff's contacts cannot by themselves support the exercise of personal jurisdiction. As the Court is cognizant, both the Seventh Circuit and United States Supreme Court have made clear that the Plaintiff cannot be the only link between the defendant and the forum for purposes of exercising personal jurisdiction. *Rogers v. City of Hobart*, 996 F.3d 812, 820 (7th Cir. 2021) (citing *Walden v. Fiore*, 571 U.S. 277, 285 (2014)); *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 879 (7th Cir. 2019) ("deliberate contact with the resident of a state is not the same thing as deliberate contact with the state itself.")

Further, the Seventh Circuit and its district courts have routinely found that simply operating a commercial website accessible in Illinois is not enough to establish personal jurisdiction over the website owner. *See, e.g.*, *Matlin v. Spin Master Corp.*, 921 F.3d 701, 706-07 (7th Cir. 2019); *Am. Bridal & Prom Indus. Ass'n, Inc. v. The Partnerships & Unincorporated Associations Identified on Schedule A*, 192 F.Supp.3d 924, 934-35 (N.D. Ill. 2016); *Gutierrez v. Wemagine.AI LLP*, No. 21 C 05702, 2022 WL 6129268, 2022 U.S. Dist. LEXIS 184037, at *5 (N.D. Ill. Oct. 7, 2022) (finding plaintiff's paying for app subscription in Illinois did not confer personal jurisdiction over app owner).

The Seventh Circuit has established specific standards for internet-based personal jurisdiction. Courts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is "interactive". *be2 LLC v. Ivanov*, 642 F.3d 555, 558-559 (7th Cir. 2011). Beyond simply operating an

4

interactive website that is accessible from the forum state, a defendant must in some way target the forum state's market. *Ibid*.

The Complaint at ¶¶13, 14, 21 includes vague allegations concerning alleged use in Illinois and across the U.S. These allegations do not overcome the Seventh Circuit's repeated holdings that mere operation of a commercial website accessible in Illinois does not convey personal jurisdiction. Because this theory fails to show Marika targeted Illinois, it fails to establish personal jurisdiction.

Plaintiff also appears to assert that Marika is subject to personal jurisdiction in Illinois because Plaintiff suffered harm, via inability to access the Website, in Illinois. Dkt. 1 at ¶¶4, 14. This argument runs face-first into a wall of jurisprudence holding that the plaintiff cannot be the link between the defendant and the forum that establishes personal jurisdiction. *Rogers*, 996 F.3d, at 820; *Hotai Ins.*, 938 F.3d, at 879; *see also Gutierrez*, 2022 U.S. Dist. LEXIS 184037, at *4-7.

Because Plaintiff's theories are foreclosed by binding appellate precedent, they must be denied and the Complaint dismissed for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2).

B.  **Plaintiff Fails to State a Claim Against Marika Because Its Website Is Not Subject to Title III of the ADA.**

To successfully state a claim under Title III, Plaintiff must allege that Marika operates a "place of public accommodation," and that Plaintiff was discriminated against because of her disability. *Colon v. HY Supplies, Inc.*, 2023 U.S. Dist. LEXIS 204526, at *8 (N.D. Ill. Nov. 15, 2023). As the Court has recognized, "[u]nder Title III of the ADA, a place of public accommodation means a 'facility operated by a private entity whose operations affect

commerce,' where the facility falls within at least one of certain categories (such as places of lodging, restaurants, and retail establishments)." *Kraszinski v. Rob Roy Country Club Vill. Ass'n*, No. 17-cv-2228, 2018 U.S. Dist. LEXIS 120601, at *15 (N.D. Ill. July 19, 2018) (citing 28 C.F.R. § 36.104).

This case presents the Court with a question of ever-increasing importance—whether a website without a nexus to a physical store is a place of public accommodation. Marika asks the Court to follow the text of the statute and the majority of national authority and find that standalone websites, including the Website, are not places of public accommodation subject to Title III.

The weight of national authority holds that places of public accommodation must be physical spaces or at least have a nexus to a physical space. Of the seven appellate circuits which have ruled on the issue, five hold that public accommodations either must be a physical space or have a nexus to a physical place:

● **Third Circuit Court of Appeals** - *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 613-14 (3d Cir. 1998) ("The plain meaning of Title III is that a public accommodation is a place").

● **Fifth Circuit Court of Appeals** - *Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530, 533-36 (5th Cir. 2016) (holding principle of *noscitur a sociis* and analysis of legislative history and DOJ regulations supported limiting Title III to physical places).

● **Sixth Circuit Court of Appeals** - *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997) ("The clear connotation of the words in [Title III] is that a public accommodation is a physical place."); *Stoutenborough v. Nat'l Football League*, 59 F.3d 580, 583 (6th Cir. 1995) (both "place" and "facility" as used in Title III refer exclusively to physical spaces).

● **Ninth Circuit Court of Appeals** - *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d

1104, 1114-15 (9th Cir. 2000) (adopting view of Third and Sixth Circuits that a public accommodation under Title III is a physical place).

● **Eleventh Circuit Court of Appeals** - *Rendon v. Valleycrest Prods.*, 294 F.3d 1279, 1282 (11th Cir. 2002) (requiring nexus between physical place and discriminatory restrictions on access of the physical space by disabled individuals); *Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266, 1274-77 (11th Cir. 2021) (concluding "websites are not a place of public accommodation under Title III of the ADA."), *opinion vacated on mootness grounds on panel reh'g*, 21 F.4th 775 (11th Cir. 2021).

"Although the Seventh Circuit has not yet decided whether Title III regulates websites," some district courts have relied on the Seventh Circuit's dicta to find that websites are places of public accommodations for ADA purposes. See, e.g., *Walsh v. Dania Inc.*, 716 F. Supp. 3d 655, 659 (N.D. Ill. 2024).[1] The decisions of these district courts, and the dicta on which they rely, argue that including websites within the definition of "place of public accommodation" is necessary to further the purpose of the ADA. *Id.* at 660; *Morgan v. Joint Admin. Bd.*, 268 F.3d 456, 459 (7th Cir. 2001).

But "considerations of policy divorced from the statute's text and purpose [can] not override its meaning." *United States v. Tohono O'odham Nation*, 563 U.S. 307, 317 (2011); *Sturgeon v. Frost*, 587 U.S. 28, 57 (2019) (statements of purpose "cannot override a statute's operative language."). Implementing a law's purpose, no matter how noble, neither requires nor allows a court to broaden the scope of a statute far beyond its text. *Yates v. United States*, 574 U.S. 528, 543 (2015) ("we rely on the principle of *noscitur a sociis*—a word is known by the

---

[1] *Dania* is readily factually distinguishable as the defendant operated physical stores and was therefore unquestionably a place of public accommodation, and its website was therefore a "good or service" of a place of public accommodation. 716 F. Supp. 3d, at 660.

company it keeps—to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress.") (internal quotations removed).

The interpretation of any statute begins with its text. *U.S. Venture, Inc. v. United States*, 2 F.4th 1034, 1037 (7th Cir. 2021). When the statute's language is plain and unambiguous, the Court must begin and end the inquiry with the text. *Briscoe v. Health Care Serv. Corp.*, 281 F. Supp. 3d 725, 738 (N.D. Ill. 2017) (Blakey, J.). The text of Title III and its implementing regulations set out a lengthy list of public accommodations. (42 U.S.C. § 12181(7); 28 C.F.R. § 36.104.[2] Reading these lists readily confirms what other courts have recognized: "[w]ebsites or other virtual businesses are not included explicitly or implicitly among any of the categories [enumerated in 42 U.S.C. § 12181(7)]." 28 C.F.R. § 36.104; *Martinez v. Mylife.com, Inc.*, No. 21-cv-4779 (BMC), 2021 U.S. Dist. LEXIS 210585, at *4 (E.D.N.Y. Nov. 1, 2021).[3]

This Court has declined to take an expansive view of this list. (*Kraszinski*, 2018 U.S. Dist. LEXIS 120601, at *15.) The Court should again adhere to the text of Title III and join other district courts that have noted that "the plain text of [Title III] contemplates inclusion of only businesses with a physical location," and accordingly, where the operator of a website has "no

---

[2] Title III's implementing regulations provide that all "places of public accommodation" must be "facilities." 28 C.F.R. § 36.104; *Kraszinski*, 2018 U.S. Dist. LEXIS 120601, at *15. "Facility" in turn is defined as a series of physical spaces, such as "buildings," "structures," "sites," "roads," and "parking lots." 28 C.F.R. § 36.104'; *see also Stoutenborough*, 59 F.3d, at 583 (television broadcasts are not facilities and therefore not places of public accommodation). A website does not fall into the scope of "facility" and thus cannot be a place of public accommodation regardless of whether or not it falls into the enumerated categories of "public accommodations", and this provides a separate reason to dismiss the Complaint.

[3] The Second Circuit has not decided the issue of Title III application to websites. Because of this, the district courts in that circuit are regularly tasked with interpreting Title III in the absence of binding on point precedent and Marika believes their reasoning and analysis may assist this Court in its own undertaking of the issue.

public-facing, physical retail operations" and no associated brick and mortar locations, the website is not subject to Title III. (*Mylife.com*, 2021 U.S. Dist. LEXIS 210585, at \*4, \*6; *Zelvin v. EZContacts.com* 2025 U.S. Dist. LEXIS 162049, at \*10-13; *Winegard v. Newsday LLC*, 556 F. Supp. 3d 173, 181-83 (E.D.N.Y. 2021); *Sookul v. Fresh Clean Threads, Inc.*, 754 F. Supp. 3d 395, 405-6 (S.D.N.Y. Oct. 16, 2024).

The residual clause "other sales or rental establishment" also does not sweep up standalone websites. 42 U.S.C. § 12181(7)(E).[4] When interpreting residual clauses, "the *ejusdem generis* canon looks for a readily discernible theme among the specific items cited in a provision that in turn suggests how the broad language that follows should be construed." *Citizens Ins. Co. of Am. v. Wynndalco Enters., LLC*, 70 F.4th 987, 1003 (7th Cir. 2023). The similar *noscitur a sociis* canon guides "when words are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar." (*Our Country Home Enters. v. Commissioner*, 855 F.3d 773, 786 (7th Cir. 2017) (internal quotations removed); *see also Yates*, 574 U.S., at 543.)

Each of the enumerated items preceding the residual clause are undeniably physical spaces: "a bakery, grocery store, clothing store, hardware store, shopping center." 42 U.S.C. § 12181(7)(E). Broadening to the entirety of the definitions section, forty nine of the fifty enumerated public accommodations refer to physical places. Notably, even for services Congress still chose to focus on the physical space where they are rendered, such as the "*office* of an accountant or lawyer, insurance *office*, *professional office* of a health care provider." 42 U.S.C. §

---

[4] The common meaning of "establishment" refers to a physical place, and therefore this residual clause is properly limited to physical spaces even without resorting to applying canons of statutory interpretation. *See, e.g.*, *Magee*, 833 F.3d, at 534; *Fresh Clean Threads*, 754 F. Supp. 3d, at 408.

9

12181(7)(F) (emphasis added).

This analysis is confirmed by the many circuit courts of appeal which have held applying these canons to the language of Title III cabins "public accommodation" to physical places. *Magee*, 833 F.3d, at 534; *Parker*, 121 F.3d, at 1014; *Ford*, 145 F.3d, at 613-14; *Weyer*, 198 F.3d, at 1114-15, *Rendon*, 294 F.3d, at 1282; *Gil*, 993 F.3d, at 1274-77. Indeed, United States Supreme Court precedent implies that "places of public accommodation" are presumptively physical locations. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 657 (2000) (holding New Jersey Supreme Court improperly "applied its public accommodations law to a private entity without even attempting to tie the term 'place' to a physical location."); *see also PGA Tour, Inc. v. Martin*, 532 U.S. 661, 677 (2001) ("The events occur on "golf courses," *a type of place* specifically identified by the [ADA] as a public accommodation.") (emphasis added).

The Seventh Circuit has stated that "[t]he site of the sale is irrelevant to Congress's goal of granting the disabled equal access to sellers of goods and services. What matters is that the good or service be offered to the public." *Morgan*, 268 F.3d, at 459. The conclusion that Title III effectively covers all businesses open to the public is not supported by the statute. "Had Congress intended Title III to apply to all businesses, Section 12181(7) would not be a list. Instead, it would simply provide that Title III applies to all businesses operating in interstate commerce." *Fresh Clean Threads*, 754 F. Supp. 3d, at 406 (quotations omitted). Congress could have chosen to write the statute so broadly. But it did not, and the courts cannot extend its scope of their own accord. Furthermore, both the legislative history of Title III and statements by the DOJ note that the listed categories are "exhaustive" and thus should not be subject to judicial expansion. *See Magee*, 833 F.3d, at 535.

Other courts in the Northern District have chosen to follow the dicta in *Morgan* as an

10

"explicit rejection of [defendant's] argument that a public accommodation must be a physical site." *Colon v. HY Supplies*, 2023 U.S. Dist. LEXIS 204526, at *14; *Dania*, 716 F. Supp. 3d, at 660. But as both acknowledged, neither they nor this Court are bound to follow dicta. *See Reich v. Cont'l Cas. Co.*, 33 F.3d 754, 757 (7th Cir. 1994) (considered dictum "provides the best, though not an infallible, guide to what the law is, and *it will ordinarily be the duty of a lower court to be guided by it*.") (emphasis added).

There could be perhaps no issue on which it would be more appropriate to break from the guidance of dicta. The dicta espouse a substantial minority position nationwide on the issue. It would require this Court to ignore the plain text of the statute and abandon well-established canons of statutory interpretation. In place of these it would compel this Court to undertake a purpose-driven analysis, directly contrary to the guidance of the United States Supreme Court. Marika urges the Court to adopt the majority viewpoint and hold that the Website is not a place of public accommodation subject to Title III, and therefore that Plaintiff has failed to state a claim.

Some courts assert that expansion is required to fulfill the purposes of the ADA because it was enacted in 1990, prior to the explosion of internet commerce. *Dania*, 716 F. Supp. 3d, at 660. But as other courts that have explored this issue have concluded, this is not really accurate. Congress was aware of the internet prior to 1990, and there were many business models, such as Sears' mail order catalogs or television shopping, which operated without physical premises and were not included in the ADA despite existing for years prior to its enactment. *See Newsday*, 556 F. Supp. 3d, at 177.

Moreover, in 35 years, including substantial amendments in 2008 when the internet was far more established, Congress has not amended the statute despite the growth of the internet in

11

daily life or the decisions by various circuit courts of appeal on the physical nexus issue. "Congress' failure to disturb a consistent judicial interpretation of a statute may provide some indication that Congress at least acquiesces in, and apparently affirms, that interpretation." *Monessen S. R. Co. v. Morgan*, 486 U.S. 330, 338 (1988) (cleaned up).

As a digital-based business, Marika understands that e-commerce plays an important role in American society. How this industry should be regulated is a matter of policy that must be decided by the input of a variety of stakeholders along with the public, such that a balance of interests can be struck after careful consideration. "The very difficulty of these policy considerations, and Congress' superior institutional competence to pursue this debate, suggest that legislative not judicial solutions are preferable." *Patsy v. Bd. of Regents*, 457 U.S. 496, 513 (1982), *superseded by statute on other grounds*.

The Honorable Judge Kendall found that not including websites in the scope of Title III would allow online-only businesses "to fully deny access to visually impaired and blind individuals." *Dania*, 716 F. Supp. 3d, at 660. But this is what the language of the statute, as it currently stands, permits. Whether one believes this policy is desirable or not, the decision remains one of policy. "Litigation is not the vehicle for resolving policy disputes." *Cook Cty. v. Wolf*, 962 F.3d 208, 254 (7th Cir. 2020) (Barrett, J., dissenting). "Nor should a court try to keep a statute up to date. Legislation means today what it meant when enacted." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 642 (7th Cir. 2012).

The courts are not empowered to make "substantive changes designed to make the law 'better.'" *Id.* It is simply not the place of this Court to write a new category of covered entity into Title III. It is the Court's duty to interpret and apply the statute as written and, as written, the Website is not within the scope of places of public accommodation under the ADA. For this and

12

the foregoing reasons, Marika asks the Court to find that the Website is not a place of public accommodation, that Plaintiff fails to state a claim under Title III, and thus to dismiss the Complaint under Fed. R. Civ. 12(b)(6).

### C. **Plaintiff's Declaratory Relief Claim Also Fails.**

Plaintiff's second cause of action appears to seek a declaratory judgment that Marika has violated Title III. As explained above, this is incorrect as the Website is not subject to Title III. But even so, courts within this District hold that declaratory relief is not appropriate or available for private ADA actions. *See Marquez v. Riveredge Hosp., Inc.*, No. 21-CV-3369, 2022 WL 832650, 2022 U.S. Dist. LEXIS 49093, at *15-16 (N.D. Ill. Mar. 21, 2022) (collecting cases). To the extent that the alleged discrimination has already occurred, a declaratory judgment does nothing to clarify the legal relations between the parties, and a declaration cannot be sought or made with respect to hypothetical future discriminatory conduct. *Id.* at *15-17. Therefore, Plaintiff's Second Cause of Action must be dismissed on this ground.

### CONCLUSION

Specially Appearing Defendant Marika, LLC is not subject to personal jurisdiction by the State of Illinois under controlling Seventh Circuit precedent. The complaint alleges only that Marika operates an interactive website accessible in Illinois and that Davis attempted to use it from Illinois—contacts that the Seventh Circuit and this Court have specifically held insufficient to establish personal jurisdiction. The absence of allegations claiming that the Defendant directed its activities at Illinois through targeted marketing, substantial Illinois sales, or other forum-directed conduct renders the jurisdictional claims deficient under current law. Additionally, Marika's website is not a "place of public accommodation" under ADA Title III and declaratory relief is not available for private ADA actions such as this. Therefore, Plaintiff's Complaint

13

against Marika should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).

Dated: February 23, 2026

Respectfully submitted,

/s/ Colleen O'Brien
Colleen O'Brien, Esq.
FAM, LLC
5553-B Bandini Blvd.
Bell, CA 90201
(323) 767-2504
cobrien@fambrands.com
dgomez@fambrands.com
Pro Hac Vice Pending

/s/ Manotti L. Jenkins
Manotti L. Jenkins (Atty. No. 6276932)
Law Offices of Manotti L. Jenkins LTD.
33 North Dearborn Street, Suite 1000
Chicago, Illinois 60602
Tel: (312) 208-9537
Fax: (872) 228-8153
mj@mljlawoffices.com

Attorneys for the Specially Appearing
Defendant, Marika, LLC

14

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the Court's CM/EF system this 23rd day of February 2026, which will provide notice and copy hereof to all counsel of record.

/s/ Manotti L. Jenkins

15